David S. Ratner (DR-7758)
Benedict P. Morelli (BM-6597)
Rory I. Lancman (RL-9404)
MORELLI RATNER PC
*Attorneys for Plaintiff*
MUSTAFA ABUELHIJA
950 Third Avenue
New York, New York 10022
(212) 751-9800
(212) 751-0046 (fx.)
rlancman@morellilaw.com



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

MUSTAFA ABUELHIJA,

                Plaintiff,

    -against-

DAVID CHAPPELLE and PILOT BOY
PRODUCTIONS, INC.,

                Defendants.
----------------------------------------------------------X

__ Civ. _____ (___)(___)
ECF CASE

**COMPLAINT**

JURY TRIAL DEMANDED

APR 17 2008
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff Mustafa Abuelhija, by his attorneys, Morelli Ratner PC, complains against defendants David Chappelle and Pilot Boy Productions, Inc., as follows:

### Preliminary Statement

    1.    This is a diversity action for breach of contract wherein plaintiff seeks specific performance of the settlement agreement, Exhibit <u>A</u>, reached in a prior case, <u>Abuelhija v. Chappelle, et al.</u>, No. 05-CV-10393 (S.D.N.Y.)("the 2005 litigation"), according to which defendants agreed, among other things, to:

        a.  Pay plaintiff 10% of the profit from the movie *Dave Chappelle's Block Party*; and

        b.  Pay plaintiff 10% of any money received related to seasons two, three and four of the televison show *Chappelle's Show*.

## Jurisdiction and Venue

2. The Southern District of New York has jurisdiction to adjudicate this matter pursuant to 28 U.S.C. § 1332 because plaintiff is a citizen of New York, defendant David Chappelle is a citizen of Ohio, defendant Pilot Boy Productions, Inc. is a Delaware corporation with its principle place of business in Towson, Maryland, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a)(2) because the events or omissions giving rise to this claim occurred within the Southern District of New York.

## Parties

4. Plaintiff Mustafa Abuelhija is defendant David Chappelle's former personal manager and is a citizen of the State of New York.

5. Defendant David Chappelle is a comedian and actor, and is a citizen of Ohio.

6. Defendant Pilot Boy Productions, Inc. is defendant Dave Chapelle's business arm and is a Delaware corporation with its principal place of business in the State of Maryland.

## Facts

*A.*
*Background*

7. Defendants have flagrantly ignored their commitments from the moment they agreed to settle plaintiff's claims.

8. On December 12, 2005, plaintiff commenced an action in the Southern District of New York, Abuelhija v. Chappelle, et al., No. 05-CV-10393 (S.D.N.Y.), seeking to enforce the terms of two oral contracts between plaintiff and defendants

Chappelle and Pilot Boy Productions concerning plaintiff's service as Chappelle's personal manager and as a producer on the movie *Dave Chappelle's Block Party*. Plaintiff demanded monetary damages for his services and injunctive relief requiring defendants to credit plaintiff appropriately in the movie *Dave Chappelle's Block Party*.

9. Shortly thereafter, plaintiff moved for a preliminary injunction, and a hearing was scheduled for December 21, 2005, with expedited discovery.

10. Plaintiff's deposition was held on December 19, 2005. During a break in the questioning, plaintiff, Chappelle and a mutual friend went into a conference room and negotiated the terms of an agreement settling plaintiff's claims. While still at defendants' counsel's office, this settlement agreement was memorialized in a document titled "Abuelhija/Chappelle Settlement Term Sheet," which was signed by counsel for all parties.

11. The next day, December 20, 2005, plaintiff withdrew his motion for a preliminary injunction and informed the Court that the case had been settled.

12. Thereafter, despite repeated attempts by plaintiff, defendants refused to execute a formal settlement agreement and release.

13. On January 27, 2006, after more than a month of delay, plaintiff wrote the Court asking that the 2005 litigation be restored. The court ordered a hearing for February 24, 2006.

14. When the parties appeared for the February 24, 2006, hearing, Chappelle signed the settlement documents ("the February 24, 2006 settlement"), Exhibit "**A**."

*B.*
*The Settlement Agreement*

15. The relevant terms of the February 24, 2006 settlement require defendants to,

among other things:

    a.    Pay plaintiff 10% of their profit from the movie *Dave Chappelle's Block Party*;

    b.    Pay plaintiff 10% of any money received related to seasons two, three and four of the television show *Chappelle's Show*;

    c.    Pay plaintiff 10% of any money received for the comedy special *For What It's Worth*; and

    d.    Instruct the payors of these monies to notify plaintiff when any such payments are made to defendants.

*C.*
*Defendants' Breach*
*Of The Settlement Agreement*

16.     To date, plaintiff has not received any payments from defendants in connection with above-mentioned settlement terms, and it took the defendants eight months to instruct the relevant payors to notify the plaintiff when any payments were made to the defendants.

17.     On or about June 30, 2007, defendant Chapelle received $399,129.96 from M.T.V. Networks, much of which was for projects on which the plaintiff was entitled to 10% pursuant to the February 24, 2006 settlement agreement.

18.     At some other point between the signing of the settlement agreement and the resent, the defendants received $799,458.40 from comedy central, of which, upon information and belief, the plaintiff was entitled to 10%.

### As and For a Cause of Action Against Defendants for Breach of Contract

19.     Plaintiff repeats, reiterates and realleges each and every allegation contained above with the same force and effect as if fully set forth herein.

20.     On December 19, 2005 and February 24, 2006, defendants entered into an

agreement with plaintiff according to which defendants were obligated, among other things, to:

    a. Pay plaintiff 10% of their profit from the movie *Dave Chappelle's Block Party*;

    b. Pay plaintiff 10% of any money received related to seasons two, three and four of the television show *Chappelle's Show*;

    c. Pay plaintiff 10% of any money received for the comedy special *For What It's Worth*; and

    d. Instruct the payors of these monies to notify plaintiff when any such payments are made to defendants.

21. Defendants have materially breached their obligations under the February 24, 2006 agreement by: (a) failing to pay plaintiff 10% of any money received related to seasons two, three and four of the television show *Chappelle's Show*; and (b) upon information and belief, failing to pay plaintiff 10% on the movie *Dave Chappelle Block Party*.

22. As a result of defendants' material breaches of the February 24, 2006 agreement, plaintiff has been damaged in amount to be determined at trial, which is in excess of $75,000.

**Wherefore,** plaintiff demands judgment against defendants ordering specific performance of defendants' obligations under the February 24, 2006 settlement, including payment of all monies owed, together with costs and attorneys' fees, and such other and further relief as this court deems just and proper.

### Jury Trial Demand

23. Plaintiff demands a trial by jury.

Dated: April 14, 2008
       New York, New York

                                                    /s/
David S. Ratner         (DR-7758)
Benedict P. Morelli     (BM-6597)
Rory I. Lancman         (RL-9404)
MORELLI RATNER PC
*Attorneys for Plaintiff*
MUSTAFA ABUELHIJA
950 Third Avenue, 11th Floor
New York, New York 10022
(212) 751-9800
(212) 751-0046 (fx.)
rlancman@morellilaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOCKET NO.: 08-CV-3679

ABUELHIJA V. CHAPPELLE

EXHIBIT



EXECUTION COPY

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement is entered into and is effective as of the _____ day of _____, 2005 by and among MUSTAFA ABUELHIJA ("Abuelhija"), on the one hand, and DAVID K. CHAPPELLE and PILOT BOY PRODUCTIONS, INC. (together, "Pilot Boy"), on the other hand.

WHEREAS, on or about December 9, 2005, Abuelhija commenced an action against Pilot Boy and others in the United States District Court for the Southern District of New York captioned Mustafa Abuelhija v. David Chappelle, Pilot Boy Productions, Inc. and Focus Feature LLC, U.S.D.C. (S.D.N.Y.), Index No. 05-cv-10393 (the "Litigation");

WHEREAS, Abuelhija and Pilot Boy desire to settle all disputes between them, whether or not asserted in the Litigation.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Settlement Agreement, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, Abuelhija and Pilot Boy, for themselves, their affiliates, agents, predecessors, successors and assigns, agree as follows:

1. Payments.

   (a) Pilot Boy shall pay to Abuelhija the sum of $815,000 within thirty (30) days after all parties have executed this Settlement Agreement.

PHDATA 1335140_2

EXECUTION COPY

(b) Pilot Boy shall pay to Abuelhija 10% of its future compensation, if any, for Seasons Two, Three and Four of *Chappelle's Show* under (i) the agreement dated as of July 12, 2004 between Central Productions LLC and Pilot Boy Productions, Inc. f/s/o Dave Chappelle and any renegotiation or restructuring thereof and (ii) the Television Writer Agreement dated as of July 12, 2004 between LRF Development Company, Inc. and Pilot Boy Productions, Inc. and any renegotiation or restructuring thereof. Pilot Boy shall have no liability to Abuelhija for any amounts received for Season One of *Chappelle's Show*. Pilot Boy shall have no liability to Abuelhija for any amounts received on or before December 20, 2005.

(c) Pilot Boy shall pay to Abuelhija 10% of any amounts actually received after December 20, 2005 under the agreement dated as of October 21, 2004 between Columbia TriStar Home Entertainment, Inc. and Dave's Comedy Special, Inc. regarding *For What It's Worth*.

(d) Pilot Boy shall pay to Abuelhija 10% of any of any amounts actually received after December 20, 2005 in excess of their investment in the *Block Party* movie, which investment is $1,146,000.

(e) All payments under this paragraph 1 shall be payable to Morelli Ratner PC as attorneys for Mustafa Abuelhija and shall be delivered to Abuelhija's attorneys, Morelli Ratner PC, 950 Third Avenue, 11th Floor, New York, NY 10022.

(f) Pilot Boy shall instruct the above-named payors ("Payors") to notify Morelli Ratner each time a payment is made to Pilot Boy, specifying the date and amount of such payment.

PHDATA 1335140_2

EXECUTION COPY

2. <u>Additional Consideration</u>.

(a) Pilot Boy shall designate Abuelhija for a "produced by" credit in the *Block Party* movie.

(b) Abuelhija shall return to Pilot Boy all property in his possession belonging to Pilot Boy, including without limitation, computers, audio and video tapes, hard drives, photographs, documents and recordings.

3. <u>Termination of Proceedings</u>. Abuelhija shall immediately discontinue the Litigation with prejudice.

4. <u>Releases</u>.

(a) Except for the obligations created by this Confidential Settlement Agreement and Mutual Release, Abuelhija, for himself, his successors, agents, heirs and assigns and anyone claiming through him or them ("Abuelhija Releasors"), releases, remises, and forever discharges Pilot Boy and their affiliates, agents, predecessors, successors, heirs and assigns ("Pilot Boy Releasees") from any and all suits, claims, causes of action, rights, demands, contracts, obligations, liabilities, losses, damages and expenses, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, fixed or contingent, existing or arising in the future, at law or in equity, in contract or in tort, which the Abuelhija Releasors have, had or ever may have against the Pilot Boy Releasees up to and including the date of this Confidential Settlement Agreement and Mutual Release.

(b) Except for the obligations created by this Confidential Settlement Agreement and Mutual Release, Pilot Boy, for themselves, their affiliates, agents, predecessors,

successors, heirs and assigns ("Pilot Boy Releasors"), release, remise, and forever discharge Abuelhija, his successors, agents, heirs and assigns ("Abuelhija Releasees") from any and all suits, claims, causes of action, rights, demands, contracts, obligations, liabilities, losses, damages and expenses, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, fixed or contingent, existing or arising in the future, at law or in equity, in contract or in tort up to and including the date of this Confidential Settlement Agreement and Mutual Release.

        (c)    <u>Waiver of Section 1542 of the California Civil Code</u>.  The parties to this Confidential Settlement Agreement and Mutual Release expressly waive all rights under Section 1542 of the California Civil Code and any law or principle of similar effect of any state or territory of the United States.  Section 1542 of the California Civil Code reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."  The parties to this Confidential Settlement Agreement and Mutual Release acknowledge that they are aware that they may hereafter discover facts in addition to or different from those which they now know or believe to exist with respect to the matters covered by this Confidential Settlement Agreement and Mutual Release.  The parties also acknowledge that such different or additional facts, if they exist, may have given or may hereafter give rise to causes of action, claims, liabilities, demands, debts, controversies, damages, costs and expenses which are presently unknown, unanticipated and unsuspected.  The parties further agree, represent and warrant that the releases in this Confidential Settlement Agreement and Mutual Release have been negotiated and agreed upon in light of that realization, and that it is their intention through this Confidential Settlement Agreement and Mutual Release, and with the advice of counsel, fully, finally and forever to release to the fullest extent permitted by law

EXECUTION COPY

any and all possible claims, causes of action, debts, liabilities, disputes and differences, known or unknown, suspected or unsuspected. In furtherance of such intention, the parties acknowledge that the releases contained in this Confidential Settlement Agreement and Mutual Release will remain in effect and will be fully binding notwithstanding the discovery or existence of any such additional or different facts.

5. <u>Confidentiality</u>. The terms of this Confidential Settlement Agreement and Mutual Release shall be maintained by Abuelhija and Pilot Boy in the strictest confidence. Neither Abuelhija nor Pilot Boy shall make any disclosure of this Confidential Settlement Agreement and Mutual Release other than as is specifically authorized in writing by the other except to consult with their respective attorneys, financial or tax advisors. Abuelhija and Pilot Boy shall limit their response to any inquiries about this Confidential Settlement Agreement and Mutual Release, the Litigation and the events, transactions and controversies underlying the Confidential Settlement Agreement and Mutual Release and the Litigation to "no comment" or "everything has been resolved to our complete satisfaction."

6. <u>Confidential Information</u>. Neither Abuelhija nor Pilot Boy shall discuss, disclose or disseminate in any form or give or participate in any interview regarding or related to the other and the employment and business relationship between them. In addition to the obligations and prohibitions in the preceding paragraph and sentence, Abuelhija and Pilot Boy shall, to the fullest extent permitted by law, keep confidential and never disclose, use, misappropriate, or confirm or deny the veracity of any statement or comment concerning the other, including all entities related to the other and any of the other's Confidential Information. The phrase "Confidential Information" as used in this paragraph, includes, but is not limited to

EXECUTION COPY

any and all information which is not generally known to the public related to or concerning the other.

Abuelhija and Pilot Boy acknowledge and agree that a disclosure or misappropriation of any Confidential Information in violation if this paragraph will cause irreparable harm, the amount of which may be difficult to ascertain. Abuelhija and Pilot Boy therefore agree that the other shall have the right to apply to a court of competent jurisdiction for an order restraining such disclosure, use or misappropriation and for such other relief as may be deemed appropriate.

7. <u>Representations by Abuelhija</u>. Abuelhija represents and warrants that:

(a) At no time during his employment with Pilot Boy did he receive money or anything else of value exceeding $100 from any entity or person with which Pilot Boy did business; and

(b) He has not assigned or pledged any of the claims asserted in the Litigation or released by this Confidential Settlement Agreement and Mutual Release. Abuelhija shall indemnify and hold Pilot Boy harmless from and against any and all claims by any person or entity asserting such an assignment or pledge.

8. <u>Damages for Breach of Certain Provisions</u>. Should the representation by Abuelhija in paragraph 7(a) of this Confidential Settlement Agreement and Mutual Release be untrue, Pilot Boy shall be relieved of any obligation to make further payments under this Confidential Settlement Agreement and Mutual Release and Abuelhija shall return to Pilot Boy all amounts previously paid as liquidated damages and not as a penalty.

9. <u>No Admission of Liability</u>. Nothing in this Settlement Agreement shall be construed as an admission by any party with respect to the merits of any existing or potential claims or defenses.

10. <u>No Accounting</u>. Pilot Boy may, but is not obligated to, perform its payment obligations under subparagraphs 1(b), (c) and (d) of this Confidential Settlement Agreement and Mutual Release by directing the entity from which it receives payments to pay 10% of such amounts to Abuelhija. Abuelhija shall have no right to audit, inspect or obtain discovery of Pilot Boy's records for any purpose whatsoever with respect to payments made directly by Payors to Abuelhija or for which Payors have provided the notifications contemplated by paragraph 1(f) of this Confidential Settlement Agreement and Mutual Release.

11. <u>Miscellaneous</u>.

(a) The parties to this Confidential Settlement Agreement and Mutual Release agree that its terms are fair and reasonable, and a result of arm's-length negotiations during which they considered all relevant factors, present or potential.

(b) In the event of any dispute concerning this Confidential Settlement Agreement and Mutual Release, the parties shall be considered joint authors and no provision shall be interpreted against any party because of authorship. The word "and" shall include within its meaning the word "or."

(c) This Confidential Settlement Agreement and Mutual Release supersedes any and all prior oral and written agreements and understandings of the parties. It is intended to be the complete and integrated understanding of the parties. To be effective, any

EXECUTION COPY

modification of this Confidential Settlement Agreement and Mutual Release must be in writing and executed by all parties affected by the modification.

(d) This Confidential Settlement Agreement and Mutual Release is executed solely for the consideration stated in this Confidential Settlement Agreement and Mutual Release and is executed without reliance on any other statements or representations.

(e) This Confidential Settlement Agreement and Mutual Release may be executed in counterparts, all of which shall constitute a single, entire Confidential Settlement Agreement and Mutual Release.

(f) Each party shall be responsible for the payment of its own attorneys' fees, costs, and expenses.

(g) Each party represents and warrants that the person signing this Confidential Settlement Agreement and Mutual Release has been duly and validly authorized to do so.

12. Choice of Law. This Confidential Settlement Agreement and Mutual Release shall be governed by and interpreted in accordance with the laws of the state of New York, without regard to its choice of law provisions.

13. Notice. All notices under this Confidential Settlement Agreement and Mutual Release shall be in writing and sent via U.S. Mail, return receipt requested, addressed as indicated below. Notice shall be deemed given on the date it is received.

24. Feb. 2006  8:33AM    FOUR SEASONS HOUSTON CONCIERGE                          No. 7045   P. 1

EXECUTION COPY

<u>Notice to Pilot Boy</u>:

David Smith, Esquire
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

with a copy to:

John B. Barry, Esq., CPA, CVA
John B. Barry, LLC
300 Allegheny Avenue
Towson, MD 21204

<u>Notice to Abuelhija</u>:

David S. Ratner, Esq.
Morelli Ratner PC
950 Third Avenue, 11th Floor
New York, NY 10022

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement on the dates specified below.

_____         _____
Witness/Attest                    Mustafa Abuelhija

_____         _____
Witness/Attest                    David K. Chappelle


Witness/Attest:                   PILOT BOY PRODUCTIONS, INC.

_____         By:_____

9                                                           PHDATA 1335140_2